IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THOMAS L. MEROS

    Plaintiff,

  v.

    Case No.2:18-cv-510
    CHIEF JUDGE EDMUND A. SARGUS
    Magistrate Judge Deavers

CHRISTA A. DIMON, *et al.*,

    Defendants.

## OPINION AND ORDER

*T*his action – the latest in a series of lawsuits filed by plaintiff in state and federal courts – was originally filed in state court and was removed to this Court by defendant Emily Sweeney pursuant to 28 U.S.C. § 1442(a)(1). *Notice of Removal*, ECF No. 1. This matter is now before the Court on the motions to dismiss filed on behalf of defendants McAllister and James J. Sweeney, ECF No. 9, defendant Emily Sweeney, ECF No. 10, defendant Youssef, ECF No. 15, defendant Rorapaugh, ECF No. 19,[1] defendants Coughlan, Dimon, and Hilbert, ECF No. 21, and defendant Sharon Chiappero, ECF No. 25; the motion for judgment on the pleadings filed on behalf of defendant Rooney, ECF No. 24; and the motion for sanctions pursuant to Rule 11 filed on behalf of defendants Youssef and Teravec, ECF No. 22. Plaintiff has filed no response to any of the motions, nor has he sought leave to file a response.

---

[1] Defendant Rorapaugh's motion also asks that plaintiff be declared a vexatious litigator.

**Allegations in the Complaint**

The rambling *Complaint,* ECF No. 2, consists of more than 452 paragraphs over 208 pages. The 15 named defendants are former state court judges, current or former federal and state officials, private attorneys and other private individuals.[2] Plaintiff, who was suspended from the practice of law in 1998 and was permanently disbarred in 2000, *id*. at ¶ 80, alleges that, beginning in the 1990's, defendants have engaged in "a never-ending, open-ended" racketeering organization violative of the Ohio Corrupt Practices Act, O.R.C. § 2923.31 *et seq*. ("OCPA"). *Id*. at ¶ 9. The purpose of the organization, plaintiff alleges, is "to destroy the ability of Plaintiff to earn a living through the practice of law, and to divest Plaintiff of all of Plaintiff's property." *Id*. at ¶ 10. The *Complaint* seeks monetary relief, including treble damages under the OCPA and compensatory and punitive damages, as well as "disgorgement" of defendants' "wages, salaries, profits, pensions and other financial gain" resulting from the alleged "racketeering enterprise." *Id*. at PageID# 207-08. Plaintiff also asks that defendant Rooney and his attorney be declared "vexatious litigators" within the meaning of O.R.C. § 2323.52. *Id*. at ¶ 452.

Specifically, plaintiff alleges that defendant James J. Sweeney (hereinafter "defendant J. Sweeney"), a state court judge, entered judgment against plaintiff in 1993 on two cognovit notes, *id.* at ¶ 121, and thereafter "transformed his judgeship into the CEO of a

---

[2]The state court docket indicates that service of process has not been effected on defendants Miguel Chiappero, W. Martin Midian, or Monica Redman.

2

criminal organization designed to. . . destroy the ability of Plaintiff to earn a living through the practice of law, and to divest Plaintiff of all of Plaintiff's property." *Id*. at ¶ 10. Plaintiff's 1994 appeal from proceedings in that matter was dismissed on the basis that plaintiff had failed to file a required praecipe. *Id*. at ¶ 136.

According to plaintiff, defendant Ranke, at the time a law clerk for the state court of appeals and a former law clerk for J. Sweeney, *id*., acted in concert with defendant J. Sweeney and "removed and retained" plaintiff's praecipe and tampered with the state court's computerized docket. *Id*. at ¶¶ 137, 159, 166, 169. "This tampering and obstruction of justice set in motion the sequence of events which allowed the racketeering enterprise to flourish and to continue to take Plaintiff's property, culminating in the deprivation of Plaintiff's law license." *Id*. at ¶ 137. *See also id*. at ¶ 162, 181.

Plaintiff further alleges that, in 1995, defendant McAllister, a retired state court judge, was assigned by defendant J. Sweeney to serve as a visiting judge in a case involving a client of plaintiff. Defendant McAllister levied sanctions against plaintiff in that action, *id*. at ¶ 196, although the award of sanctions was later reversed on appeal. *Id*. at ¶ 199.

Plaintiff filed for bankruptcy protection, during the course of which he was "forced" to sell his home. *Id*. at ¶¶ 228-29. In 1999, defendants Miguel and Sharon Chiappero contracted to purchase the house for $160,000.00, *id*. at ¶ 230, but ultimately paid only $50,000.

*Id*. at ¶ 254.[3] Plaintiff alleges that the Chiapperos fraudulently misrepresented financing arrangements for the purchase, *id*. at ¶¶ 234-36, and that Miguel Chiappero committed perjury in subsequent litigation. *Id*. at ¶ 236.[4] According to plaintiff, the Chiappero defendants "directly or indirectly participat[ed] in" defendant J. Sweeney's scheme. *Id*. at ¶ 238. "The longer that Plaintiff was kept in Bankruptcy by the racketeering enterprise, the more it benefitted all of the Defendants, particularly Defendants Miguel and Sharon Chiappero." *Id*. at ¶ 239. In 2006, plaintiff sued the Chiapperos in state court in connection with this alleged fraud. *Id*. at ¶¶ 240. Their attorney, defendant Rooney, assisted the Chiapperos in "committing perjury" in that litigation. *Id*. at ¶ 241. According to plaintiff, that perjury ultimately resulted in a monetary judgment against plaintiff (and which was apparently satisfied in 2013 by assets held in plaintiff's bankruptcy proceedings, *id*. at ¶ 389) and was "material" (in some unspecified fashion) to a tax debt owed by plaintiff. *Id*. at ¶¶ 242, 282.

The *Complaint* also alleges that other defendants, federal and state officials, have obstructed plaintiff's attempts to petition the government for redress of his grievances against defendant J. Sweeney. *Id*. at ¶¶ 286-314. Plaintiff alleges that, in 2016, defendants Dimon, an Assistant Ohio Attorney General, Hilbert, the Deputy Director of Ohio's Organized Crime Investigations Commission, Emily Sweeney, former United States Attorney for the Northern District of Ohio

---

[3] Plaintiff explains that "{i}t was important to protect the house so that Plaintiff could reacquire it from Defendants Chiappero." *Id*. at ¶ 266.
[4] As noted *supra*, it does not appear that Miguel Chiappero has been served with process.

4

(hereinafter "defendant E. Sweeney"), and Coughlan, former Ohio Disciplinary Counsel, "refused to investigate" plaintiff's complaints against defendant J. Sweeney and the alleged racketeering enterprise "for the purpose of aiding and abetting the racketeering conspiracy. . . . and allowing [defendant] J. Sweeney the unrestricted opportunity to continue his pattern and practice of harassment of Plaintiff." *Id*. at ¶¶ 287. *See also id.* at ¶ 291, 295. Moreover, defendants E. Sweeney and Dimon, along with defendants Midian and Redman (attorneys retained by the State of Ohio to collect tax debts)[5] retaliated against plaintiff when they pursued collection procedures in connection with plaintiff's tax debt that had originated 18 years earlier. *Id*. at ¶ 305, 307. The *Complaint* also appears to assert claims under 42 U.S.C. § 1983 against defendants Dimon, Hilbert, J. Sweeney, E. Sweeney, Midian and Redman for obstruction of justice, retaliation, and denial of equal protection and due process. *Id*. at ¶¶ 392-409.

As previously noted, plaintiff was suspended from the practice of law in 1998 and was permanently disbarred in 2000. The disciplinary proceedings were based, in part, on plaintiff's "harass[ment of] judges by filing lawsuits. . . ." *Id*. at ¶ 304. Yet, plaintiff alleges, it was he who was the "victim of harassment" by "judges [ ] who abused their judicial offices for their own personal ventures. . . and to manage the racketeering enterprise." *Id*. Specifically, plaintiff complains that, in 1994, he filed disciplinary complaints with defendant Coughlan against defendant J. Sweeney and other state

---

[5] As noted *supra*, it does not appear that defendants Midian and Redman have been served with process.

5

court judges. *Id*. at ¶ 322. Defendant Coughlan forwarded the complaints to the judges but allegedly took no action on plaintiff's complaints. *Id*. at ¶ 324. A 1997 disciplinary hearing against plaintiff was, according to plaintiff, all "part of the racketeering enterprise's retaliation" against plaintiff. *Id*. at ¶ 325.[6]

Defendant Youssef, plaintiff's former client, allegedly joined the racketeering conspiracy in 1994. *Id*. at ¶ 340. Plaintiff had represented Youssef's business in an action against its insurer, *id*. at ¶ 348, resulting in a substantial monetary jury verdict in 1997. *Id*. at ¶¶ 348, 349. According to plaintiff, defendant Rorapaugh, in-house counsel for the insurance company, "sought revenge against Plaintiff. . . [and] joined the racketeering conspiracy and obstructed justice." *Id*. at ¶ 351-52. Although plaintiff had paid all the expenses of the litigation, *id*. at ¶ 364, Youssef, Rorapaugh and defendant Tekavec, an attorney who later represented Youssef, caused a check issued by the insurer to be made payable to Youssef and his business only, omitting plaintiff as co-payee. *Id*. at ¶¶ 355, 357. Defendants Youssef and Tekavec allegedly acted to deprive plaintiff of his agreed fees. *Id*. at ¶ 364. Plaintiff also alleges that defendants Youssef and Tekavec later filed a fraudulent claim against plaintiff and instituted a fraudulent malpractice action against plaintiff in the latter's bankruptcy proceedings. *Id.* at ¶¶ 359, 361. In 1999, and

---

[6] The body of the *Complaint* also contains allegations against one Amy Stone, who is identified as an Assistant Disciplinary Counsel. *Complaint*, ¶ 422. According to plaintiff, Ms. Stone participated in the racketeering enterprise by failing to pursue disciplinary action against defendant J. Sweeney. *Id*. at ¶¶ 423, 428. However, Ms. Stone is not named as a defendant in the caption of the *Complaint* and she has not been served with process. The Court concludes that she is not a defendant in this action.

6

allegedly in furtherance of the racketeering enterprise, defendant Tekavec recovered a fraudulent judgment against plaintiff in state court, which formed the basis of collection proceedings and which kept plaintiff "under the control of the bankruptcy court." *Id*. at ¶ 387.[7]

**Motions to Dismiss and for Judgment on the Pleadings**

A number of defendants[8] have filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. ECF Nos. 9, 10, 15, 19, 21, 25. Defendant Rooney has filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF No. 24. As noted *supra*, plaintiff has made no response to the motions, nor has he sought leave to respond to the motions. A litigant's failure to respond to a motion to dismiss does not foreclose a court's ability to consider the merits of the motion. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). However, even in the absence of a response to the motion, the moving party always bears the burden of establishing a right to the relief sought. *Id*. This Court will

---

[7] The *Complaint* also asks that defendant Rooney, who acted as counsel for the Chiappero defendants, as well as the attorney who represents defendant Rooney in defense against plaintiff's claims, be declared vexatious litigators within the meaning of O.R.C. § 2323.52. *Id.* at PageID# 425. Plaintiff bases this request on his understanding that defendant Rooney and his attorney moved, presumably in the action that plaintiff previously filed in this Court, that plaintiff be declared a vexatious litigator, but did not serve their request on plaintiff. *Id*. at ¶ 448 ("They have filed a Motion in the U.S. District Court to have Plaintiff Meros declared a vexatious litigator."). As plaintiff was advised in the earlier federal action, the record establishes that defendant Rooney did not file such a motion in that action. *Meros v. Dimon*, No. 2:17-cv-103, *Order*, ECF No. 69 (S.D. Ohio July 20, 2018). The Court will therefore not further consider plaintiff's request to declare defendant Rooney and his attorney to be vexatious litigators.
[8] Defendants J. Sweeney, McAllister, E. Sweeney, Youssef, Rorapaugh, Coughlan, Dimon, Hilbert, and Sharon Chiappero.

consider the merits of the motions to dismiss, notwithstanding plaintiff's failure to respond to those motions.

Standards

A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983); *Carter v. Welles-Bowen Realty, Inc.*, 493 F.Supp. 2d 921, 923 (S.D. Ohio 2007). In considering a motion to dismiss under the provisions of Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Under general pleading standards, the facts alleged in the complaint need not be detailed, although "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555. A complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Barany-Snyder v. Weiner*,

539 F.3d 327, 332 (6th Cir. 2008). "[W]e construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.* In resolving motions under Rule 12(b)(6) and Rule 12(c), a court must consider the allegations of the complaint, and may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted).

Although *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and a document filed *pro se* is "to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), even a *pro se* complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft,* 556 U.S. at 678 (internal quotation marks omitted)*.*

<u>OCPA Claims: Statute of Limitations</u>

Defendants J. Sweeney, McAllister, E. Sweeney, Youssef, Rorabaugh, Coughlan, Dimon, Hilbert, Rooney and Sharon Chiappero move to dismiss on the basis of untimeliness of the action. "The statute of

9

limitations defense 'may be raised on a motion to dismiss under Rule 12(b)(6) when it is apparent from the face of the complaint that the time limit for bringing the claim has passed.'" *Korn v. Paul Revere Life Ins. Co.*, 238 Fed. Appx. 109, 111-12, 2007 WL 1892077, at *2 (6th Cir. 2007)(quoting, in part, *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)).

Plaintiff asserts claims under the OCPA, O.R.C. § 2923.31 *et seq.*, which is modeled on the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 ("RICO"). *Morrow v. Reminger & Reminger Co., L.P.A.*, 183 Ohio App. 3d 40, 55 (Ohio 10th Dist. Ct. App. 2009). A claim under the OCPA must be commenced "within five years after the unlawful conduct terminates or the cause of action accrues. . . ." O.R.C. § 2923.34(J). A cause of action under the statute accrues when the plaintiff knew or should have known of the injury underlying the claim. *Meros v. Dimon*, Case No. 2:17-cv-103, 2017 WL 6508723 (S. D. Ohio Dec. 20, 2017) (citing *Doe v. Archdiocese of Cincinnati*, 109 Ohio St. 3d 491, 500 (2006)). The "last predicate act" rule for determining when the cause of action accrues is not applicable. *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997)(Applying the RICO statute of limitations). "[T]he plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other, earlier predicate acts that took place outside the limitations period." *Id*. at 190.

The *Complaint* was filed in state court on April 23, 2018. *Docket*, Exhibit B to *Notice of Removal*. The claims asserted in this action are clearly untimely. The "enterprise" about which plaintiff complains

10

allegedly originated almost 25 years ago, in 1994, when defendants J. Sweeney and Ranke allegedly tampered with a court docket, resulting in the dismissal of plaintiff's appeal. Moreover, the *Complaint* makes clear that plaintiff has known about the alleged scheme and defendants' alleged wrongdoing for many years. For example, he filed disciplinary complaints with defendant Coughlan against defendant J. Sweeney and other state court judges in 1994. *Complaint*, ¶ 322. The alleged fraud surrounding the purchase of plaintiff's house by the Chiappero defendants allegedly occurred in 1999, *id*. at ¶¶ 230-36, and plaintiff sued these defendants, who were represented by defendant Rooney, in connection with that alleged fraud in 2006. *Id*. at ¶ 240. Plaintiff's claims against defendants Youssef, Rorapaugh and Tekavec allegedly arose out of litigation in which a jury returned a verdict in 1997. *Id*. at ¶ 348. Tellingly, plaintiff alleges that the "racketeering enterprise. . . was made public on the internet on January 23, 2003 and has been published continuously since that time." *Id*. at ¶ 291.

Although plaintiff has neither responded to the motions nor sought leave to respond, he contends in the *Complaint* that the alleged racketeering enterprise continues to deprive plaintiff of his property and that "the statute of limitation [sic] on the entire enterprise cannot lapse." *Id*. at ¶ 390. Moreover, plaintiff refers to email correspondence between him and certain defendants and to tax collection efforts that occurred in 2016. *Id*., at ¶¶ 409-417. The Court rejects both suggested bases for extending the statute of limitations in this case.

First, to suggest that a series of predicate acts can continue indefinitely is inconsistent with the basic objective – *i.e.*, repose – that underlies limitations periods. *See Klehr*, 521 U.S. at 180. Moreover, the alleged refusal on the part of defendants Dimon, Hilbert, E. Sweeney, and Coughlan to investigate plaintiff's complaints against defendant J. Sweeney and the alleged racketeering enterprise in 2016, *see id.* at ¶¶ 287, 291, 295, cannot serve to resurrect otherwise lapsed causes of action. In order to begin a new statute of limitations period, the new act cannot be "merely a reaffirmation of a previous act;" the new act must "inflict new and accumulating injury on the plaintiff." *Lehman v. Lucom*, 727 F.3d 1326, 1331 (11th Cir. 2013)(applying RICO). Even efforts allegedly taken in 2016 by defendants Dimon, Hilbert, Midian, and Redman to collect plaintiff's tax debt that had originated 18 years before, *see Complaint*, ¶ 307, cannot serve to resurrect claims arising out of the acts that allegedly resulted in that debt.

In short, the Court concludes that plaintiff's OCPA claims are foreclosed by the applicable statute of limitations.[9]

§ 1983 and *Bivens* Claims

The *Complaint* appears to assert claims against defendants Dimon, Hilbert, E. Sweeney – who are alleged to have refused to investigate plaintiff's complaints and to have initiated collection efforts

---

[9] Defendants Ranke and Tekavec did not file motions to dismiss based on the statute of limitations. However, in light of the Court's conclusion that plaintiff's claims under the OCPA are untimely, the Court will dismiss the claims against these defendants on that basis as well. In any event, plaintiff's claims against defendant Ranke, including claims under the OCPA, were dismissed with prejudice by this Court in *Meros v. Dimon*, No. 2:17-cv-103, *Opinion & Order*, ECF No. 63, PageID# 1206 (S.D. Ohio Dec. 20, 2017).

arising out of plaintiff's tax debt, *id*. at ¶¶ 392-409 – for the denial of constitutional rights in the form of obstruction of justice, retaliation for plaintiff's having petitioned for redress of grievances, and denial of equal protection and due process.[10] Title 42 of the United States Code, Section 1983, creates a cause of action for the deprivation, by a person acting under color of state law, of one's constitutional rights.  A victim of a constitutional deprivation by a federal agent may recover damages against that federal officer. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

Defendant E. Sweeney is a former federal prosecutor whose prosecutorial decisions are cloaked with absolute immunity from liability for monetary damages. *See Imbler v. Pachtman*, 424 U.S. 409 (1976). To the extent that defendant Dimon and Hilbert qualify as state prosecutors, their exercise of prosecutorial discretion is similarly immune from liability in this action. Moreover, plaintiff's claims based on an alleged obstruction of justice and denial of due process cannot proceed because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Even "a victim of a crime has no federal right to have his claim investigated." *Martin v. Koljonen*, 89 F. App'x 567, 568 (6th Cir. 2004). Plaintiff's claim based on a denial of equal protection cannot proceed because plaintiff alleges no facts that would support such a claim. *See Johnson v.*

---

[10]Plaintiff also alleges that defendants Midian and Redman violated his constitutional rights in connection with their efforts as private attorneys retained by the State of Ohio to collect on plaintiff's 18-year old tax debt. *Complaint*, ¶¶ 392-409. Because it does not appear that service of process has been effected on these defendants, the Court will not consider the sufficiency of plaintiff's claims against them.

13

*Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) ("The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis."). Similarly, the conclusory allegations regarding First Amendment retaliation, which are devoid of any factual support whatsoever, fail to state a plausible claim upon which relief can be granted. *See Twombly*, 550 U.S. at 555. Accordingly, the Court concludes that the *Complaint* fails to state a claim for the deprivation of constitutional rights by defendants Dimon, Hilbert and E. Sweeney upon which relief can be granted.

In short, the Court concludes that the *Complaint* fails to assert a claim upon which relief can be granted.[11]

**Motions to Declare Plaintiff a Vexatious Litigator and for Sanctions**

Defendant Rorapaugh's motion, ECF No. 19, not only seeks the dismissal of the claims asserted against him but also asks that plaintiff be declared a vexatious litigator. Moreover, defendants Youssef and Tekavec move for the imposition of sanctions against plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure, ECF No. 22. In *Meros v. Dimon*, 2:17-cv-103, and in the exercise of its inherent power, this Court granted the motions of defendants Youseff and Ranke to declare plaintiff a vexatious litigator. The Court went on to state:

---

[11] Many of the motions present additional legal challenges to the *Complaint*. In light of the Court's conclusion that plaintiff's claims are either untimely or substantively insufficient, the Court will not address those other challenges.

14

> Meros is hereby warned that Rule 11 sanctions will be
> imposed if he continues to file frivolous lawsuits alleging
> that defendants participated in a RICO scheme or caused him
> to lose his law license. Furthermore, it is **ORDERED** that
> Meros is barred from filing any action in this Court
> without submitting a certification from an attorney that
> his claims are warranted. Finally, if he ever files a
> complaint in this or any other Court concerning his
> dealings with any of the defendants in this case, his
> complaint must include the caption and case number of all
> the prior actions he has filed against the named
> defendants.

*Id., Opinion & Order*, ECF No. 63, PageID# 1204-05 (Dec. 20, 2017). Thus, plaintiff has already been declared a vexatious litigator by this Court; it is not apparent that a second such declaration, such as that sought by defendant Rorapaugh, will serve any meaningful purpose.

Moreover, the Court concludes that its discretion is better exercised in declining to impose Rule 11 sanctions against plaintiff at this time. Most of the claims asserted by plaintiff in *Meros v. Dimon*, 2:17-cv-103, were dismissed without prejudice, plaintiff did not file this action in this Court, and he does not assert in this action any claim under RICO. However, the claims asserted by plaintiff against the moving defendants in this action will be dismissed with prejudice. This judgment will serve to prohibit a new action by plaintiff against those defendants on not only the claims asserted in this action but also on claims that could have been litigated in this action.

> Under federal *res judicata,* or claim preclusion, "a final
> judgment on the merits bars further claims by parties or
> their privies based on the same cause of action." *See
> Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59
> L.Ed.2d 210 (1979). The doctrine precludes litigation of
> claims that "were previously available to the parties,
> regardless of whether they were asserted or determined in
> the first proceeding." *Brown v. Felsen,* 442 U.S. 127, 131,
> 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

15

*E.E.O.C. v. Frank's Nursery & Crafts, Inc*., 177 F.3d 448, 462-63 (6th Cir. 1999). Thus – and to be absolutely clear – plaintiff may not initiate further litigation in this or any other court against these defendants on the claims asserted in this action or on claims that could have been asserted in this action. Should he do so, he will almost certainly be met with a successful motion for sanctions. *See* Fed. R. Civ. P. 11; Ohio R. Civ. Pro. 11.

Under these circumstances, Defendant Rorapaugh's request that plaintiff be declared a vexatious litigator, ECF No. 19, and the motion, filed on behalf of defendants Youssef and Tekavec, for sanctions pursuant to Rule 11, ECF No. 22, are **DENIED.**

**WHEREUPON** the motions to dismiss filed on behalf of defendants McAllister and James J. Sweeney, ECF No. 9, defendant Emily Sweeney, ECF No. 10, defendant Youssef, ECF No. 15, defendant Rorapaugh, ECF No. 19, defendants Coughlan, Dimon, and Hilbert, ECF No. 21, and defendant Sharon Chiappero, ECF No. 25; and the motion for judgment on the pleadings filed on behalf of defendant Rooney, ECF No. 24, are **GRANTED**. The claims against these defendants are **DISMISSED WITH PREJUDICE,** as are the claims asserted against defendants Ranke and Tekavec. Defendant Rorapaugh's request that plaintiff be declared a vexatious litigator, ECF No. 19, and the motion, filed on behalf of defendants Youssef and Tekavec, for sanctions pursuant to Rule 11, ECF No. 22, are **DENIED.**

| 3/27/2019 | s/Edmund A. Sargus, Jr. |
| Date | Edmund A. Sargus, Jr. |
| | Chief United States District Judge |